IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| NIKKI THOMPSON, | ) | Case No. 4:10CV00012 |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| CITY OF DANVILLE, VIRGINIA, ET AL., | ) | |
| Defendants. | ) | By: Jackson L. Kiser |
| | ) | Senior United States District Judge |

Before me are Defendants' Motion for Summary Judgment (ECF No. 24) and Motion for Summary Judgment Order to be Entered (ECF No. 26). For the reasons discussed in this Memorandum Opinion, I hereby **GRANT** Defendants' Motion for Summary Judgment and **GRANT** Defendants' Motion for Summary Judgment Order to be Entered.

I. Facts

On April 6, 2008 Danville police stopped a vehicle at South Main Street and Kemper Road in Danville, VA in response to a reported hit and run. Defs.' Br. Mot. Sum. J. 1. The driver of the vehicle was a 14-year-old male who, when stopped, threw a "baggie" out of the window that contained white rocks. Pl.'s Br. Opp. Sum. J. 2. This prompted Sergeant V.T. Brown ("Brown") to request Officer J.W. Riggins ("Riggins") to run his K-9 unit around the vehicle. Defs.' Br. Mot. Sum. J. 1. The K-9 alerted to the console of the vehicle, despite the fact that the substance in the baggie thrown from the vehicle— which police initially thought might be crack cocaine—was only peppermint candy.[1] Pl.'s Br. Opp. Sum. J. 2. It does not appear as though any drugs were found.

The driver of the vehicle is Plaintiff's nephew. Compl. ¶ 11. "An associate" managed to inform Plaintiff about her nephew's hit and run and subsequent police stop. *Id.* ¶ 10. Plaintiff then called the

---

[1] Police did not learn it was peppermint candy until after the conclusion of the time period relevant to this lawsuit. Pl.'s Br. Opp. Sum. J. 2, ex. A at 4.

Danville Police Department, discovered where the police stop took place and informed the dispatcher that Plaintiff was on her way to the scene. *Id.* ¶¶ 11–13. When Plaintiff arrived at the scene her nephew was in custody and Officer Riggins was on his knees searching the vehicle. *Id.* ¶¶ 14, 15. Plaintiff approached Riggins from behind and asked why he was searching the vehicle, which is Plaintiff's sister's white Volvo. Pl.'s Br. Opp. Sum. J. 2. Riggins asked Plaintiff to step away. *Id*. Another officer held up the baggie for Plaintiff to see and informed her that was why they were searching the vehicle. *Id.*

Plaintiff contends that she complied with the officer's request and backed away from the investigation. *See id.* ("At that point Ms. Thompson left from behind Officer Riggins and went and stood over towards the sidewalk area."). Defendants state that Plaintiff was "loud and disorderly" and that "[she] refused to back away from the vehicle . . . ." Defs.' Br. Mot. Sum. J. 2. Sergeant Brown testified at Plaintiff's criminal trial[2] that Plaintiff remained four to six feet away from the vehicle and Plaintiff cites this testimony as accurate in her brief. Pl.'s Br. Opp. Sum. J. 7–8, ex. A at 28. As the investigation proceeded, Plaintiff continued to verbally argue with the police and at least one pedestrian. *Id.* at 3; Defs.' Br. Mot. Sum. J. 2–3.

Sergeant Brown decided to place Plaintiff under arrest. Pl.'s Br. Opp. Sum. J. 3; Def.'s Br. Mot. Sum. J. 3. Brown testified that Plaintiff had not attempted to physically interfere with the investigation when he decided to place her under arrest. Pl.'s Br. Opp. Sum. J. 3, ex. A at 41. Officer E. W. Kearns ("Kearns") stated in his affidavit that Plaintiff was "extremely hostile and argumentative" prior to her arrest. Defs.' Br. Mot. Sum. J. 3. After Brown handcuffed Plaintiff he escorted her across the street towards his patrol car. *Id.*; Pl.'s Br. Opp. Sum. J. 4. Brown stated that, while crossing the street, Plaintiff told him, "[y]ou have done fucked up now; you got the wrong woman, you punk motherfucker." Defs.'

---

[2] Plaintiff was charged with "Assault and Batter Law Enforcement Officer and Obstruction of Justice" in violation of Va. Code. §§ 18.2-57, 18.2-460, the former a felony and the latter a misdemeanor. Pl.'s Br. Opp. Sum. J. 1, ex. A at 1. Plaintiff was tried before a jury in Danville Circuit Court in front of the Hon. David A. Melesco, case nos. 08-889 & 1018. *Id.* ex. A at 1. The jury found Plaintiff not guilty on both charges. *Id.* at 5.

Br. Mot. Sum. J. 3.

Once at the cruiser, Brown began to conduct a search incident to arrest on Plaintiff's person. Pl.'s Br. Opp. Sum. J. 4; Defs.' Br. Mot. Sum. J. 3. Plaintiff alleges that, prior to arriving at the scene, she had just been released from the hospital where she had undergone surgery. Compl. ¶ 28. Plaintiff verbally objected to the search, saying she did not want to be searched by a man, especially when there was a woman officer present who could conduct the search. Compl. ¶31; Pl.'s Br. Opp. Sum. J. 4, ex. A 29–30. In her Complaint, Plaintiff states that, due to her surgery she was unable to button her pants and Brown's search of her person was causing her pants to fall off. Compl. ¶ 30.

Brown nevertheless proceeded with the search and Plaintiff began to object physically. Pl.'s Br. Opp. Sum. J. 4. Brown was standing behind Plaintiff and she kicked backwards, hitting Brown's knee. *Id.*; Defs.' Br. Mot. Sum. J. 3. Plaintiff tried to kick back a second time, but Brown caught her foot and forced Plaintiff forward onto the ground. Pl.'s Br. Opp. Sum. J. 4; Defs.' Br. Mot. Sum. J. 4. Once on the ground, Plaintiff continued to struggle, so Brown employed his Taser and "drive stunned[3]" Plaintiff in the thigh. *Id.* Plaintiff was temporarily complaint after Brown stunned her, so Brown attempted to place her in his patrol car. *Id.* Plaintiff contends that Brown pushed her against the patrol car's open door in such a way that she could not enter and she fought back against his efforts. Pl.'s Br. Opp. Sum. J. 5. Defendants contend that Plaintiff simply became combative again. Defs.' Br. Mot. Sum. J. 4. Sergeant Brown then "drive stunned" Plaintiff a second time with his Taser in an effort to get her in the patrol car. *Id.*; Pl.'s Br. Opp. Sum. J. 5. After the second application of the Taser, Plaintiff "went right into the car." Pl.'s Br. Opp. Sum. J. ex. A at 20.

---

[3] In drive stun mode, "the operator presses the Taser to a subject's body and then pulls the trigger to emit a current." *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 859 n. 1 (7th Cir. 2010). The other method of deploying a Taser is "dart mode," where the Taser is fired as a projectile and "achieves greater distance between the contact nodes which can cause neuro-muscular incapacitation." *Brooks v. City of Seattle*, 599 F.3d 1018, 1026 (9th Cir. 2010). In contrast to dart mode, "[t]he use of the Taser in drive-stun mode is painful, certainly, but also temporary and localized, without incapacitating muscle contractions or significant lasting injury." *Id.* at 1027. The Ninth Circuit has classified a dart stun as "intermediate force" and a drive stun as "less than intermediate force." *Id.* at 1027–28.

3

II. Procedural History

Plaintiff filed her seven-count Complaint (ECF No. 1) on April 5, 2010 against the City of Danville, VA, the City of Danville Police Department, and Sergeant V. T. Brown. Compl. ¶¶ 4–6. Plaintiff asserts claims under 42 U.S.C. §§ 1983 and 1985 and 18 U.S.C. § 245, as well as the common law torts of assault, battery and negligence. *Id.* ¶¶ 50–70. Plaintiff demands judgment against Defendants in the amount of $500,000.00 plus interest, costs and fees. *Id.* Defendants filed their Answer (ECF No. 5) on May 10, 2010 denying all allegations in Plaintiff's seven counts and asserting the affirmative defenses of qualified immunity, sovereign immunity, assumption of the risk, contributory negligence and that the police acted in a reasonable, good faith manner. Answer ¶¶ 50–70, "AFFIRMATIVE DEFENSES" ¶¶ 1–10.

On April 7, 2011 Defendants filed their Motion for Summary Judgment (ECF No. 24) and brief in support (ECF No. 25). Plaintiff did not respond within the 14-day limit imposed in the Pre-Trial Order (ECF No. 10). Consequently, Defendants moved for an "Order to be Entered" (ECF No. 26) accepting Defendants' Rule 56 Motion as well taken, citing the Pre-Trial Order's penalty for failure to file response briefs. Defs.' Mot. Order Ent. ¶¶ 1–5; Pre-Trial Order ¶ 4. Plaintiff eventually filed her response brief (ECF No. 27) to Defendants' Rule 56 Motion on April 25, 2011, but has yet to respond to Defendants' Motion for an Order to be Entered accepting their Rule 56 Motion as well taken. Defendants filed their Reply (ECF No. 30) to Plaintiff's Response on May 2, 2011. At oral argument on May 23, 2011 Plaintiff's counsel stated she had previously filed an affidavit explaining her default but the Court records showed no affidavit had been filed. Subsequently, on May 24, 2011 Plaintiff's counsel filed the affidavit.

III. Standard of Review

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). The court must view the facts and the inferences to be drawn from them in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). A genuine issue of material fact

exists if reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

IV. Summary of Arguments

As an initial matter, Defendants argue that their Rule 56 Motion should be well taken. Defs.' Mot. Order Ent., "WHEREFORE" Clause. The Court's Pre-trial Order commands that "[b]riefs in opposition must be filed within 14 days of the date of service of the movant's brief." Pre-Trial Order ¶ 4. Further, the Pre-trial Order states that "**EXCEPT FOR GOOD CAUSE SHOWN, IF BRIEFS IN OPPOSITION TO THE MOTIONS ARE NOT FILED, IT WILL BE DEEMED THAT THE MOTION IS WELL TAKEN.**" *Id.* (emphasis original). Based on that language and Plaintiff's late filing, Defendants argue that Summary Judgment is appropriate without reaching the merits of their argument. Defs.' Mot. Order Ent. ¶ 5.

As to the merits, Defendants argue that the Danville Police Department is "non suis juris"— it does not have the capacity to be sued—and therefore the Danville Police Department is entitled to Summary Judgment. Defs.' Br. Mot. Sum. J. 15. Defendants argue that Sergeant Brown is entitled to qualified immunity because, on the facts alleged, Plaintiff's constitutional rights were not violated. *Id.* at 10, 15. Regarding the City of Danville, Defendants first argue that, because Brown did not violate Plaintiff's constitutional rights, the City of Danville cannot be held liable for negligent and improper training. *Id.* at 15. If a constitutional violation were found, however, Defendants assert that Summary Judgment would still be proper on the City's behalf because "Plaintiff has failed to identify a written policy or custom observed by these officers for which the City of Danville could be liable." *Id.* at 17.

Relying only on Sergeant Brown's testimony from Plaintiff's accompanying criminal trial,[4] Plaintiff's Response provides a more in depth recitation of the facts alleged in her Complaint, but offers little to counter Defendants' legal arguments. A charitable assumption is that Plaintiff contends these

---

[4] ". . . Plaintiff has chosen only to present at this stage a Statement of Facts relying wholly on Defendant's sworn testimony at the Danville Circuit Court trial of *Commonwealth of Virginia v. Nikki Nicole Thompson* and the incidents of that trial." Pl.'s Br. Opp. Sum. J. 6.

facts justify denying Defendants' Rule 56 Motion under the legal framework Defendants proffer.[5]  Pl.'s

Br. Opp. Sum. J. 7.  Plaintiff also asserts that she has a common law right in Virginia to use reasonable

force to resist an unlawful arrest.  *Id.* at 7.

V.  Analysis

A.  Defendants' Motion for Summary Judgment Order to be Entered

Defendants filed their Motion for Summary Judgment on April 7, 2011.  Under the Pre-Trial

Order, then, Plaintiff's response was due on Thursday, April 21, 2011.  Plaintiff did not meet that

deadline, instead filing her brief on Monday, April 25.  Because this Court was closed on Friday, April 22,

Plaintiff's Monday filing was, in effect, one day late.[6]  Fed. R. Civ. P. 6(d) arguably allows Plaintiff three

extra days to meet the 14-day deadline.[7]  It would be inappropriate to grant Defendants' Motion for

Summary Judgment on technical grounds where the 3-day rule arguably cures Plaintiff's dilatory filing.

Plaintiff's failure to file any kind of response to Defendants' Motion for Summary Judgment

Order to be Entered, failure to file a Motion for Extension of Time and failure to timely submit any

written excuse for her multiple violations, however, does justify considering Defendants' Motion for

Summary Judgment Order to be Entered as well taken.  The Pre-Trial order states in bold, capital letters

that unopposed motions will be well taken except for good cause shown.  Pre-Trial Order ¶ 4.  Plaintiff

has offered no excuse for her failure to file a response to Defendants' second motion (ECF No. 26), nor

---

[5]  Under the section of Plaintiff's brief titled "Standard for Summary Judgment" Plaintiff states, "Your Plaintiff accepts Defendant's recitation of the standard for the granting of a Motion for Summary Judgment." Pl.'s Br. Opp. Sum. J. 5.  It is unclear whether Plaintiff accepts all the legal standards Defendants set forth in their brief or whether Plaintiff merely acquiesces to the general standard for summary judgment discussed, for example, in section III of this Memorandum Opinion.  The only other reference Plaintiff makes to Defendants' legal arguments is "Defendant is correct that [Plaintiff's] rights with respect to suing the city rise or fall on whether her rights were violated under the Fourth Amendment."  *Id.* at 11.

[6]  *See* Fed. R. Civ. P. 6(a)(1)(c) (computing time limits to "include the last day of the period, but if the last day is . . . a legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday").

[7]  *See Love v. Commissioner of Social Sec.*, 605 F.Supp.2d 893, 895–96 (W.D.Mich. 2009) (applying the 3-day rule to electronic transmission service, but criticizing extension as a "vestige" of pre-electronic age).  *But cf.* Fed. R. Civ. P. 6(e) advisory committee note to 2001 amendments (noting that electronic transmission is not always instantaneous, and may not arrive in a readable format, causing further delays).

did Plaintiff ever move to request more time. Defendants filed their Motion for Summary Judgment Order to be Entered on April 22, 2011. Because this Court was closed that day, the effective filing date was Monday, April 25. As of the May 23, 2011 hearing on both of Defendants' Motions, twenty-eight days had passed since Defendants' filing without any response from Plaintiff. Plaintiff's neglect is inexcusable and Defendants' Motion for Summary Judgment Order to be Entered is, in accordance with the Pre-Trial Order, well taken.

B. Defendants' Motion for Summary Judgment

Even if Defendants' Motion for Summary Judgment Order to be Entered were not well taken, the facts of this case warrant summary judgment on the merits for the reasons that follow.

1. Summary Judgment as to the Danville Police Department

Fed. R. Civ. P. 17(b)(3) provides that where a defendant is neither an individual nor a corporation, the capacity to be sued is determined by state law. *See also Streit v. County of Los Angeles*, 236 F.3d 552, 565 (9th Cir. 2001) (deferring to state law in a suit against the county sheriff's department to determine the agency's capacity to be sued). Local police and sheriff's departments in Virginia are "non suis juris," meaning they simply do not have the capacity to be sued. *Rutledge v. Town of Chatham*, 4:10CV00035, 2010 WL 3835662, at *1 (W.D.Va. Sept. 30, 2010) (holing that, under Virginia law, Chatham and Danville Police Departments did not have the capacity to be sued); *Burnley v. Norwood*, No. 3:10-cv-264, 2010 WL 3063779, at *5 (E.D.Va. Aug. 4, 2010) (holding that, under Virginia law, Richmond City Police Department did not have the capacity to be sued); *Muniz v. Fairfax County Police Dep't*, No. 1:05-cv-446, 2005 WL 1838326, at *2 (E.D.Va. Aug. 2, 2005) (holding that the Fairfax County Police Department is an operating division of the county and is therefore not amenable to suit). Summary judgment in favor of the Danville Police Department is, therefore, appropriate in this case.

2. Summary Judgment as to Sergeant Brown

Police officers performing their discretionary duties are entitled to qualified immunity and "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Issues regarding qualified immunity should be resolved "at the earliest possible stage in litigation" because "qualified immunity is an entitlement not to stand trial or face the other burdens of litigation . . . ." *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001). In *Saucier*, the Court established to two-step test[8] for determining an officer's right to qualified immunity. First, the court must determine whether, viewing the facts in the light most favorable to Plaintiff, the officer violated Plaintiff's constitutional rights. *Id.* at 201. Second, the court must resolve whether that right was clearly established at the time of the violation. *Id.* "If no constitutional right would have been violated, even when the facts are viewed in the best light for the injured Plaintiff, the analysis ends; the plaintiff cannot prevail." *Jones v. Buchanan*, 325 F.3d 520, 526 (4th Cir.2003).

Defendants argue that, as to Brown, "[t]he gravamen of this action is a claim of excessive force, both in the effectuation of the arrest of the Plaintiff (in that the arrest was allegedly unlawful) and the conduct of the officers once the arrest had taken place." Defs.' Br. Mot. Sum. J. 7. Plaintiff does not dispute this claim in her Response and based on the counts in her Complaint, I must agree. Count I of the Complaint alleges that Brown acted purposefully or recklessly to deprive plaintiff of her right to be free from illegal confinement and physical abuse. Compl. ¶ 51. Count II asserts that "[t]he intentional acts complained of constitute an assault and battery on Plaintiff." *Id.* ¶ 54. Count III contends that Plaintiff has suffered physically and mentally due to Brown's "intentional acts . . . ." *Id.* ¶ 56. Count IV alleges that Brown conspired with other officers to deny plaintiff her "rights, privileges and immunities, and the equal protection of the laws to which she was entitled under the constitutional laws of the

---

[8] Since *Saucier*, the Court has ruled that these two steps need not be taken in order. *See Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009) (holding that the lower courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand").

United States and the State of Virginia in violation of 42 U.S.C. § 1985(3)." *Id.* ¶ 58. Count V simply states that Brown "breached a duty owed to Plaintiff" through his conduct (no details were given on the specific nature of that duty). *Id.* ¶ 61. Counts VI and VII only concern the Danville Police Department and the City of Danville. *Id.* ¶¶ 63–70.

Thus, the Complaint appears to allege that Brown intentionally or recklessly used excessive force to unlawfully arrest Plaintiff and deprive her of her constitutional rights. In *Graham v. Connor et al.*, 490 U.S. 386 (1989), the Supreme Court provided the following framework for analyzing excessive force claims:

> In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. See *Baker v. McCollan*, 443 U.S. 137, 140 (1979) ("The first inquiry in any § 1983 suit" is "to isolate the precise constitutional violation with which [the defendant] is charged"). In most instances, that will be either the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments, which are the two primary sources of constitutional protection against physically abusive governmental conduct. The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized "excessive force" standard. See *Tennessee v. Garner*, 471 U.S., 1, 7–22 (1985) (claim of excessive force to effect arrest analyzed under a Fourth Amendment standard); *Whitley v. Albers,* 475 U.S. 312, 318–26 (1986) (claim of excessive force to subdue convicted prisoner analyzed under an Eighth Amendment standard).

*Id.* at 394. Though Plaintiff contends that Defendants violated the "Due Process clause of the Fifth and Fourteenth Amendments" the Supreme Court has explicitly rejected an excessive force analysis under those Amendments when the alleged injury occurred during an arrest. "We . . . hold that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Id*. at 395. This analysis encompasses Plaintiff's unlawful arrest claim. *See Brown v. Gilmore*, 278 F.3d 362, 367 (4th

Cir. 2002) (analyzing Plaintiff's § 1983 false arrest claim under the Fourth Amendment's unreasonable seizure framework).

### a. Unlawful Arrest

"To establish an unreasonable seizure under the Fourth Amendment, [Plaintiff] needs to show that the officers decided to arrest her . . . without probable cause." *Id.* at 367. Brown arrested Plaintiff for impeding a police investigation. Defs.' Br. Mot. Sum. J. 3. Va. Code § 18.2-460(A) provides:

> If any person without just cause knowingly obstructs a judge, magistrate, justice, juror, attorney for the Commonwealth, witness, any law-enforcement officer, or animal control officer employed pursuant to § 3.2-6555 in the performance of his duties as such or fails or refuses without just cause to cease such obstruction when requested to do so by such judge, magistrate, justice, juror, attorney for the Commonwealth, witness, law-enforcement officer, or animal control officer employed pursuant to § 3.2-6555, he shall be guilty of a Class 1 misdemeanor.

Thus, the proper inquiry is whether Brown had probable cause to believe Plaintiff was committing a crime in violation of Va. Code § 18.2-460(A). In *Brown*, the Fourth Circuit stated, "[f]or probable cause to exist, there need only be enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed; evidence to convict is not required." *Brown*, 278 F.3d at 367. "Two factors govern the determination of probable cause in any situation: 'the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct.'" *Brown*, 278 F.3d at 368 (quoting *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992)).

"For [an officer] to have had probable cause for [an] arrest [under Va. Code § 18.2-460(A)], the facts and circumstances must have warranted a reasonable belief that [the suspect] was, or was on the verge of, unlawfully obstructing [the officer] in the performance of his duties." *Wilson v. Kittoe*, 337 F.3d 392, 398 (4th Cir. 2003). In *Figg v. Schroeder*, 312 F.3d 625 (4th Cir. 2002), Police encountered a situation similar to the case at bar. There, one of the Plaintiffs was the relative of an individual who police had shot and killed during a struggle after a DUI stop. *Figg*, 312 F.3d at 631. Plaintiff's brother had informed her that her relative was shot and she quickly drove to the crime scene. *Id.* at 632.

"When [Plaintiff] arrived on the scene, a deputy ordered her to stay in her car, but she disobeyed, and she got out of her car yelling and cursing." *Id.* After refusing to return to her car, Plaintiff was placed under arrest. *Id.* Like the present case, Plaintiff challenged her arrest under § 1983. *Id.* at 635. Because the Plaintiff in *Figg* refused to leave the scene and return to her car, "it is undisputed that the officers at the scene had probable cause to believe that Ms. Williams had violated Virginia's obstruction of justice statute, and thus she could lawfully be placed under arrest." *Id*. at 637 (citing *Chicago v. Morales*, 527 U.S. 41, 69 (1999)).

Taking Plaintiff's asserted facts in the present matter as true, the most Plaintiff ever backed away from the officers conducting the investigation—despite repeated warnings to leave the scene—was "four to six feet . . . ." Pl.'s Br. Opp. Sum. J. 10. Plaintiff asserts that this was an adequate distance "so as not to impede the officers' investigative work . . . ." *Id.* Plaintiff also admits to having verbal confrontations with the officers on the scene and another pedestrian. *Id.* at 3. Based on the analysis in *Figg*, Brown had probable cause to arrest Plaintiff. Plaintiff's reliance on Brown's testimony that she stood four to six feet away from the investigation—where she continued to argue with the other officers—is unavailing. Standing less than a body's length away from an investigating officer does not constitute obeying an order to leave.

Plaintiff argues that she had a common-law right to resist an illegal arrest. This is a curious argument for Plaintiff to make as the only substantive legal analysis in her brief. *Commonwealth v. Hill*, 264 Va. 541 (2002) does recognize that individuals "have a right to resist an illegal arrest . . . ." *Id.* at 808. This argument would appear to be a defense against a criminal prosecution like the one Plaintiff faced in Virginia Circuit Court, rather than an argument in support of her civil claim. Virginia's common law right to resist an illegal arrest simply does not touch on the Fourth Amendment's reasonableness analysis. Further, based on the discussion above, the arrest was legal and justified under the Fourth Amendment's probable cause standard. Summary judgment is, therefore, warranted on this count.

b. Excessive Force

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment[9] requires careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "Reasonableness is determined by the information possessed by the officer at the moment the force is employed." *Culosi v. Bullock*, 596 F.3d 195, 201 (4th Cir. 2010) (citing *Waterman v. Batton*, 393 F.3d 471, 477 (4th Cir. 2005)). Further, "a mistaken understanding of facts that is reasonable in the circumstances can render a seizure reasonable under the Fourth Amendment." *Milstead v. Kibler*, 243 F.3d 157, 165 (4th Cir. 2001). Reading the facts in the light most favorable to Plaintiff, Brown's first use of his Taser occurred after Plaintiff kicked him and the second use occurred as Brown was attempting to place Plaintiff in the police cruiser. Compl. ¶ 39; Pl.'s Br. Opp. Sum. J. 9. Plaintiff argues that she was not resisting entry into the cruiser in an effort to resist arrest; rather, she contends that Brown pushed her shoulder against the door of the cruiser and she was unable to enter the vehicle. Pl.'s Br. Opp. Sum. J. 9.

The Fourth Circuit has examined an officer's use of a Taser under the Fourteenth Amendment, *Orem v. Rephann*, 523 F.3d 442, 446 (4th Cir. 2008), but not the Fourth Amendment. The Eleventh Circuit, though, has examined a number of § 1983 cases involving Tasers using the Fourth Amendment's reasonableness standard. In those cases, the Eleventh Circuit seems to distinguish between threatening and non-threatening suspects, with the former justifying Taser use. *Floyd v. Corder*, 2011 WL 1834249 at *2 (11th Cir. 2011). The Eleventh Circuit has even found Taser use reasonable when it "may well have

---

[9] The Fourth Circuit has held that "the Fourth Amendment protections do not extend to arrestees or pretrial detainees" *Orem v. Rephann*, 523 F.3d 442, 446 (4th Cir. 2008). "The Fourth Amendment [only] governs claims of excessive force during the course of an arrest, investigatory stop, or other 'seizure' of a person." *Riley v. Dorton*, 115 F.3d 1159, 1161 (4th Cir. 1997). An excessive force claim against an arrestee or pretrial detainee should be analyzed under the Fourteenth Amendment. *Orem*, 523 F.3d at 446. "The point at which Fourth Amendment protections end and Fourteenth Amendment protections begin is often murky." *Id.* Because the facts of this case are in that "murky" area—and, more importantly, because both parties appear to agree that the Fourth Amendment should cover the entirety of the excessive force claim—the analysis for this case will proceed under the Fourth Amendment.

12

prevented a physical struggle and serious harm" to the officer and suspect where no physical conflict had yet occurred. *Draper v. Reynolds*, 369 F.3d 1270 (11th Cir. 2004). Further, in *Floyd*, the Court reasoned that, "the existing law at the time of the incident [October 2007] did *not* put [the officer] on notice that deploying his Taser three times to subdue a noncompliant suspect where the underlying crime was minor and where no violence had occurred violated Floyd's constitutional rights." *Floyd*, 2011 WL 1834249 at *2.

If Plaintiff had not attacked Brown during his lawful search incident to a lawful arrest, this would be a different case. Because she physically confronted him, though, Brown's use of the Taser was justified in both instances. Even if Brown were mistaken when he "drive stunned" Plaintiff the second time—thinking she was resisting when she was actually unable to enter the vehicle due to her positioning—"a mistaken understanding of facts that is reasonable in the circumstances can render a seizure reasonable under the Fourth Amendment." *Milstead*, 243 F.3d at 165. Brown would have been reasonably justified in thinking that Plaintiff's resistance as he attempted to place her in the cruiser was another attack. "Because 'police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving,' the facts must be evaluated from the perspective of a reasonable police officer on the scene, and the use of hindsight must be avoided." *Waterman v. Batton*, 393 F.3d 471, 476–77 (4th Cir. 2005) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). Defendants also provide and cite an expert report from John Eric Combs, School Director and Chief Instructor at the North Carolina Justice Academy which concludes that Brown's actions were objectively reasonable. Defs.' Br. Mot. Sum. J. 13. Based on the foregoing discussion, summary judgment is appropriate on this count.

### 3. Summary Judgment as to the City of Danville

A § 1983 Plaintiff can maintain an action against a municipality for constitutional deprivations "visited pursuant to a governmental 'custom'" as well as a "policy statement, ordinance, regulation, or

13

decision officially adopted and promulgated by that body's officers." *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 690. (1978). In the instant matter, though, Plaintiff's claim against the City of Danville must fail for two reasons.

First, in *City of Los Angeles v. Heller*, 475 U.S. 796, the Supreme Court stated

> [None] of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm. If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.

*Heller*, 475 U.S. at 810–11. Because I have concluded that Plaintiff's constitutional rights were not violated as a matter of law, it must follow, *ispo facto*, that the City cannot be liable for a violation that did not occur.

Second, Plaintiff fails to plead that any custom, policy statement, ordinance, regulation or decision officially adopted by the City of Danville and promulgated by its officers that led to her constitutional violations, assuming *arguendo* that violations occurred. Under *Heller*, the *only* way to for a municipality to be liable in a § 1983 action is through one of the listed actions above. Plaintiff's failure to plead any such action would be fatal to her claim against the City of Danville is Plaintiff's constitutional rights had actually been infringed.

4. Plaintiff's Remaining State Law Claims

In *Sigman v. Town of Chapel Hill*, 161 F.3d 782 (4th Cir. 1998) the Fourth Circuit upheld the dismissal of a wrongful death claim brought under state law because it found that the officer's actions were objectively reasonable under a § 1983 analysis. The Fourth Circuit stated, "because we have concluded that [the officer's] actions were, as a matter of law, reasonable in the circumstances of this case, they cannot be negligent or wrongful . . . the plaintiffs have no state law claim." *Sigman*, 161 F.3d at 789. Further, in *Milstead v. Kibler*, 243 F.3d 157 (4th Cir. 2001) (abrogated in part on other grounds) the Fourth Circuit affirmed a Western District of Virginia opinion that concluded—in the context of a §

1983 action—that "[i]f the Fourth and Fourteenth Amendment claims are decided in favor of the defendants on their motion for summary judgment, the state law claims should also be dismissed," *Milstead v. Kibler*, 91 F.Supp.2d 895, 901 (W.D.V.A. 2000), aff'd, 243 F.3d 157. To the extent that Plaintiff makes state law claims for assault, battery, or negligence, those claims should fall with the federal claims.

VI. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment Order to be Entered (ECF No. 26) is hereby **GRANTED** as well taken pursuant to the Pre-Trial Order. Defendants' Rule 56 Motion (ECF No. 24) is also **GRANTED** for the reasons discussed above. The clerk is directed to **DISMISS** this case from the docket of this Court.

The clerk is directed to send a copy of the Memorandum Opinion and accompanying Order to all counsel of record.

Entered this 3rd day of June, 2011.

                                                  s/Jackson L. Kiser
                                                  Senior United States District Judge